ORIGINAL

Priority  
Send  ✓  
Enter  ✓  
Closed  
JS-5/JS-6  
JS-2/JS-3  
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

AUG 16 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CRAIG JONES,

    Defendant.

No. CR 03-1291 DSF

OPINION AND ORDER DENYING DEFENDANT CRAIG JONES' MOTION TO SUPPRESS

ENTERED ON ICMS

AUG 17 2004

## I. INTRODUCTION

Defendant Craig Jones is charged with several narcotics-related offenses. He moves this Court to suppress evidence seized from his mother's residence (and a non-operational Cadillac parked in a driveway on the side of the residence) as a result of a warrant issued on December 8, 2003 by United States Magistrate Judge Jennifer T. Lum.[1] Jones apparently contends that Magistrate Judge Lum was not a "neutral and detached magistrate" and that the search was therefore illegal under

---

[1] None of the other defendants has joined in this motion. Jones apparently does not seek to suppress evidence recovered, if any, from his own residence, which was also listed in the warrant.

cc: USPO
PSA
USM

the Fourth and Fifth Amendments to the Constitution. The Court disagrees, and DENIES the Motion.

## II. FACTUAL ALLEGATIONS

Neither side has requested an evidentiary hearing. For the purpose of this motion, the Court assumes the following to be true:

1. Magistrate Judge Jennifer T. Lum was an Assistant United States Attorney, most recently assigned to the Major Frauds section of that office until her resignation on June 30, 2001[2];

2. Magistrate Judge Lum accepted appointment as a United States Magistrate Judge on July 2, 2001.

3. On December 6, 2002 Magistrate Judge Lum signed Misc. No. 02-2142(A)-M authorizing the continued use of pen registers and trap and trace devices on a phone used by eventual co-defendant Danny Purvis.[3]

4. On December 8, 2003 Special Agent Patrick J. Sullivan presented to Magistrate Judge Lum an affidavit to support a complaint and for warrants to search certain premises, including that of Jones' mother, Rosie Jones.

5. Jones did not reside in the residence; rather he "spent [his] days" there,

---

[2] The Government suggests defense counsel inadvertently attached to his exhibits a copy of the docket in a different case. It appears to the Court that counsel intentionally attached this exhibit to establish the date of Magistrate Judge Lum's resignation. Though the Court doubts this document is admissible to establish that fact, the point is moot as the Government does not dispute this date. The Government's statement, at page 2 of its Opposition, that Magistrate Judge Lum resigned June 30, 2003 appears to be a typographical error.

[3] This information was volunteered by the Government in its Opposition.

-2-

received mail there and stored property there."[4]

5. Paragraph 8 of the affidavit states that the investigation began in March 2001.

6. Footnote 3 on page 13 of the affidavit states: "Between May 10, 2001 and November, 28 2003. [sic] The CW provided information and purchased narcotics from the Defendants at the instruction of law enforcement agents."[5]

7. The record contains no other information predating June 30, 2001.

8. The record does not establish the date on which the United States Attorney first became involved with or became aware of the investigation.

9. There is no suggestion in the record that Magistrate Judge Lum participated in the investigation of or any discussions concerning prosecution of this matter -- or that she had any knowledge whatever concerning the matter. There is no suggestion that the matter had any connection with the Major Frauds section of the United States Attorney's Office. There is no suggestion that Magistrate Judge Lum had any connection with the Narcotics section of the United States Attorney's Office during the relevant period -- or at any time.

### III. DISCUSSION

Jones unquestionably has a right to be free from unlawful searches, and to have any search warrant signed by a "neutral and detached magistrate." Johnson

---

[4] The unsigned declaration submitted at the time the Motion was filed on June 3 states that Jones "resided" in the residence. The signed version, filed June 7, has a handwritten change. The word "resided" is crossed out, and "spent my days" is handwritten in. The caption page used to file the declaration is titled "SIGNED DECLARATION IN SUPPORT OF PREVIOUSLY FILED MOTION TO SUPPRESS" and gives no indication of any change. In any event, the Government has not contended Jones lacks standing.

[5] Though Jones contends the complaint was based in large part on information provided by the cooperating witness, the affidavit establishes that such was not the case. This would not be dispositive in any event.

-3-

v. United States, 333 U.S. 10 (1948). Though Jones refers to the Fifth Amendment, and in his Supplemental Memorandum to the Fourth Amendment, he does not specifically allege that Magistrate Judge Lum was <u>not</u> "neutral and detached." He merely recites the chronological history of the investigation, noting that "this case was active at least by **May 10, 2001**" and "Judge Lum was a member of the United States Attorney's Office . . . until she resigned on **June 30, 2001**." He concludes: "It follows that the United States Attorney's Office was prosecuting this case while Judge Lum was still a member of that office. . . . The overlap invalidates the warrant issued by Judge Lum on December 8, 2003. . . . Judge Lum should have recused herself in this matter." The Court disagrees.

Jones provides absolutely no legal support for his conclusion. As noted in the Opposition, none of the cases cited by Jones involves facts even remotely similar to the facts here. Further, what little case law there is based on related fact patterns makes clear that there are no grounds for recusal, and the recusal statute makes clear that Magistrate Judge Lum was not required to recuse herself.

A magistrate judge must disqualify herself "[w]here [she] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of a particular case in controversy." 28 U.S.C. § 455 (b)(3). Had Congress meant to broaden the grounds for recusal to encompass the facts here, it certainly knew how to do so. Here Magistrate Judge Lum was required -- not to recuse -- but to handle all matters properly before her. Canon 3A(2) of the Code of Conduct for United States Judges ("A judge should hear and decide matters assigned, unless disqualified . . . .").

Cases involving similar facts have all supported the premise that recusal was not appropriate. Indeed, in arguably stronger cases, appeals courts have declined to require recusal. In <u>United States v. Outler</u>, 659 F.2d 1306 (5th Cir. 1981), for example, the magistrate judge, while an AUSA, had actually prosecuted

-4-

the defendant at a probation revocation hearing alleging the defendant prescribed drugs without a medical purpose. Two years later the AUSA, now a magistrate judge, issued a search warrant in connection with an investigation into defendant's medical practice. Though he had personally prosecuted this same defendant, the case was not the same. The circuit court noted the "overwhelmingly sufficient" information in the warrant, and found no reason to believe the magistrate judge did not act impartially. He was not required to disqualify himself and the search was valid.

Ruling on a similar case, the Ninth Circuit reached the same conclusion. In United States v. Silver, 245 F.3d 1075 (9th Cir. 2001), District Judge William Keller presided over Silver's trial for making false statements to the Department of Defense. Judge Keller had been the United States Attorney (and therefore ultimately responsible for every matter handled by that office) during two of the years in which Silver had been investigated for earlier unrelated charges of mail fraud. Silver alleged that Judge Keller's handling of his trial on other charges gave the appearance of "pay back time." As in Outler, the Ninth Circuit noted that § 455(b)(3) did not apply because the proceedings were not the same. In United States v. Heffington, 952 F.2d 275 (9th Cir. 1991), the Ninth Circuit specifically noted that Congress desired "not to penalize government attorneys for their service by limiting opportunities thereafter." Id. at 279. Though it assumed for the sake of argument that 28 U.S.C. § 455 applied, the Court found that a former public defender who had represented the same defendant in an earlier drug case was sufficiently "neutral and detached" to issue a search warrant.

Jones may argue here that Magistrate Judge Lum had to recuse herself because the proceedings are the same. But here, Magistrate Judge Lum was not the counsel, adviser, etc. and Jones has not alleged that she was. If anything, her relationship to Jones is far more "neutral and detached" than that of a former prosecutor previously involved in prosecuting the very defendant now before him

or her.

No reasonable person could conclude that a possible six week overlap with an investigation handled by a different section would adversely impact Magistrate Judge Lum's neutrality.

## IV. CONCLUSION

There is no support for the contention that Magistrate Judge Lum was not "neutral and detached." She was not required to recuse herself. Jones' constitutional rights were not violated.

The Motion is denied.

IT IS SO ORDERED.

Dated: August 16, 2004

                                                    Dale S. Fischer
                                                    United States District Judge