ORIGINAL

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 03-1291-DSF |
| Plaintiff, | |
| v. | ORDER DENYING MOTION OF DEFENDANT PURVIS TO SUPPRESS AND DENYING REQUEST FOR FRANKS HEARING |
| DESHANN TRAYLOR, et al., | |
| Defendants. | |

ENTER ON ICMS

MAR - 9 2005

## I. INTRODUCTION

Defendant Danny Purvis ("Purvis") moves to suppress all electronic surveillance evidence and evidence derived from such evidence, alleging that the government made inadequate efforts at "minimization." He also seeks an evidentiary hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) to address the issue of "necessity."

The investigation underlying this motion involved the wiretapping, authorized by the Honorable A. Howard Matz ("Judge Matz"), of three separate telephones based on affidavits signed by Patrick J. Sullivan ("Sullivan"), a Special Agent of the Federal Bureau of Investigation ("FBI"). In their companion motion, Defendants Elizabeth Vasquez and Deshann Traylor have provided all relevant documentation relating to the wiretap authorizations. Few, if any, facts

cc: PSA
USPO
USM

162

are in dispute. The parties generally disagree only as to the conclusions to be drawn from those facts. Therefore the Court cites only such facts as are necessary to an understanding of the Court's ruling.

For the reasons set forth here, the motion is DENIED.

## II. STATEMENT OF FACTS

On December 12, 2002, the government filed a wiretap application for target telephone number (213) 798-7720 ("Target Telephone 1") subscribed to by Deshann Traylor ("Traylor") and target telephone number (323) 997-5270 ("Target Telephone 2") subscribed to by Shalia V. Jones but used by Purvis. Vasquez & Traylor Ex. A. Sullivan filed an affidavit ("Sullivan Aff.")[1] in support of this application. Vasquez & Traylor Ex. B. On December 19, 2002, Judge Matz signed an order authorizing interception of calls on these target telephones. Vasquez & Traylor Ex. C.[2]

On January 17, 2003, the government filed a second wiretap application for continued interception of Target Telephone 1 and Target Telephone 2, as well as for interception of target telephone number (323) 449-9917 ("Target Telephone 3") subscribed to by Avonne Lee, but used by Traylor. Vasquez & Traylor Ex. D; Vasquez & Traylor Ex. E at p. 50. Sullivan filed an affidavit in support of this application. Vasquez & Traylor Ex. E. On January 17, 2003, Judge Matz signed an order authorizing interception of calls on these target telephones. Vasquez & Traylor Ex. F.

---

[1] Purvis's arguments are directed primarily at the Sullivan Affidavit submitted with the December 12 Application. Therefore, the Court cites only to this affidavit in analyzing Purvis's arguments.

[2] Exhibit C itself is not signed, but the Court assumes a signed version exists, as no Defendant raises this issue.

1    On February 14, 2003, the government filed an application for continued
2    interception of Target Telephones 1, 2, and 3. Vasquez & Traylor Ex. G. Sullivan
3    filed an affidavit in support of this application. Vasquez & Traylor Ex. H. On
4    February 14, 2003, Judge Matz signed an order authorizing continued interception
5    of calls on these target telephones. Vasquez & Traylor Ex. I.

6    On March 13, 2003, the government filed an application for continued
7    interception of Target Telephones 1, 2, and 3. Vasquez & Traylor Ex. J. Sullivan
8    filed an affidavit in support of this application. Vasquez & Traylor Ex. K. On
9    March 13, 2003, Judge Matz signed an order authorizing continued interception of
10   calls on these target telephones. Vasquez & Traylor Ex. L.

### III. LEGAL STANDARD

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, prohibits electronic surveillance of criminal suspects unless law enforcement officials comply with specified privacy safeguards." United States v. Staves, 383 F.3d 977, 980 (9th Cir. 2004). "The purpose of the Act is to 'provide law enforcement officials with some of the tools thought necessary to combat crime without unnecessarily infringing upon the right of individual privacy.'" United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1988) (citation omitted). "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.

#### A. Standing

"Under the Act, only 'aggrieved persons' as defined in section 2510(11) may move to suppress evidence obtained through electronic surveillance." United States v. King, 478 F.2d 494, 506 (9th Cir. 1973) (citing 18 U.S.C. § 2518(10)(a)). Section 2510(11) defines "aggrieved person" as "a person who was a party to any

intercepted wire, oral, or electronic communication or a person against whom the interception was directed . . . ."

### B. "Minimization"

Every order and extension thereof shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . .

18 U.S.C. § 2518(5).

The United States Supreme Court has held that, in determining whether the minimization requirement has been met, the district court must consider the reasonableness of the interceptions in light of the purpose of the wiretap and the totality of the circumstances of each case. Scott v. United States, 436 U.S. 128, 139-40 (1978). The Court described factors to be considered, such as percentage of nonpertinent calls, duration and nature of the conversation, use of coded language, pattern of calls, scope of the conspiracy, and stage of surveillance. Id. at 140-41. "[B]lind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer." Id. at 140.

"The government has the burden to show proper minimization." United States v. Torres, 908 F.2d 1417, 1423 (9th Cir. 1990). Where, as here, a defendant does not challenge the introduction of specific conversations that should have been minimized, the court will "only examine whether the government has shown a prima facie case of compliance with the minimization requirement." Id.

"The statute does not require that all conversations unrelated to the criminal activity specified in the order be free from interception. Rather it requires that measures be adopted to reduce the extent of such interception to a practical minimum while allowing the legitimate aims of the Government to be pursued." United States v. Turner, 528 F.2d 143, 156 (9th Cir. 1975) (per curiam). Where the government presents evidence that shows it made reasonable and good faith

1  efforts at minimization, its burden has been met.  See id. at 157-58 (where agents
2  instructed on need for minimization and were told not to listen to irrelevant
3  conversations); Torres, 908 F.2d at 1423 (where agents instructed on
4  minimization, required to read minimization guidelines, and AUSA was made
5  available on a twenty-four hour basis for consultation).  "Once the Government
6  has made a prima facie showing of reasonable minimization, the burden shifts to
7  defendants to show how more effective minimization could have taken place."
8  United States v. Bennett, 825 F. Supp. 1512, 1530 (D. Colo. 1993); accord United
9  States v. Cheely, 814 F. Supp. 1430, 1446 n.17 (D. Alaska 1992) (defendant must
10 show either that the government seeks to admit conversations that should have
11 been minimized, or that the government persisted in a pattern of interception that
12 was clearly unreasonable).

### C. The Propriety of a Franks Hearing

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  Franks, 438 U.S. at 155-56.  "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . .  Allegations of negligence or innocent mistake are insufficient."  Id. at 171-72.

"A defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was deliberately or recklessly included in an affidavit submitted in support of a wiretap order, and the false statement was

material to the district court's finding of necessity." Staves, 383 F.3d at 982. "False statements are material if the wiretap application purged of the false statements would not support findings of probable cause and necessity." Id. (citations omitted). "The lack of an affidavit or sworn statement offering proof of deliberate falsehood, as required by Franks, is enough in itself to defeat [the defendant's] demand for an evidentiary hearing." United States v. Ruddell, 71 F.3d 331, 334 (9th Cir. 1995).

### III. ANALYSIS

#### A. Standing

At the hearing on this Motion, the government withdrew its argument that Purvis has not established standing to challenge the legality of the wiretap when Purvis submitted a declaration establishing standing.

#### B. The Government Took Reasonable Steps to "Minimize"

Purvis contends the government did not adequately minimize non-relevant conversations. Purvis relies on the numbers of calls intercepted versus the number of calls that were determined to be drug related, as documented in summaries provided in ten day and twenty day reports. Purvis argues that failure to attempt to minimize all non-relevant calls requires suppression of all intercepted communications, citing United States v. George, 465 F.2d 772, 774-75 (6th Cir. 1972). In George conversations were intercepted in utter disregard for the minimization requirements. Id. at 774. Agents were not provided with a copy of the court order, nor were they given any instructions regarding minimization. Id. The circumstances here are distinguishable.

The government argues that it instituted reasonable minimization procedures. The supervising AUSA held a meeting with the monitoring agents and instructed them on the minimization requirements. Sullivan Decl. ¶ 2. All monitoring agents were required to read the minimization memorandum, the

1  affidavit in support of the wiretap application, and the wiretap order, and were also
2  required to agree to comply with the minimization requirements. Id. ¶¶ 3, 4.
3  Supervising agents were present in the monitoring room at all times, and the
4  AUSA was available on-call to answer minimization questions. Id. ¶ 5. These
5  procedures are consistent with those found to be reasonable in Torres, 908 F.2d at
6  1423.

7       The summaries do show a high percentage of calls intercepted that were not
8  drug related. Exhibit B to the Perez Declaration shows that 545 calls were
9  intercepted from Target Telephone 2 and only 106 were drug related. Exhibit C to
10 the Perez Declaration shows that 426 calls were intercepted from Target
11 Telephone 2 and only 71 were drug related. Exhibit D to the Perez Declaration
12 shows that 483 calls were intercepted from Target Telephone 2 and only 146 were
13 drug related. Exhibit E to the Perez Declaration shows that 388 calls were
14 intercepted from Target Telephone 2 and only 123 were drug related. Exhibit F to
15 the Perez Declaration shows that 418 calls were intercepted from Target
16 Telephone 2 and only 186 were drug related. Exhibit G to the Perez Declaration
17 shows that 412 calls were intercepted from Target Telephone 2 and only 117 were
18 drug related. Exhibit H to the Perez Declaration shows that 416 calls were
19 intercepted from Target Telephone 2 and only 144 were drug related.

20      "[B]lind reliance on the percentage of nonpertinent calls intercepted is not a
21 sure guide" to whether reasonable efforts at minimization have been made. Scott,
22 436 U.S. at 140. The government argues that the high percentage of non-relevant
23 intercepted calls is reasonable considering the circumstances of the investigation.
24 The government points to the fact that this was a complex drug conspiracy.
25 "[W]hen the investigation is focusing on what is thought to be a widespread
26 conspiracy more extensive surveillance may be justified in an attempt to determine
27 the precise scope of the enterprise." Id.
28

1  The government also argues that many of the calls in this situation were
2  very brief in duration. Of the total calls intercepted over Target Telephone 1, 94%
3  were less than two minutes in duration. Sullivan Decl. ¶ 8. Of the total calls
4  intercepted over Target Telephone 2, 93% were less than two minutes in duration.
5  Id. Of the total calls intercepted over Target Telephone 3, 92% were less than two
6  minutes in duration. Id. When "telephone calls are brief in duration, a listener
7  frequently cannot determine a particular call's relevance to the investigation
8  before the call has been completed." United States v. Homick, 964 F.2d 899, 903
9  (9th Cir. 1992).

10  The government maintains that many of the calls involved coded language,
11  making it difficult to determine whether a particular call was pertinent. Sullivan
12  Decl. ¶ 9. "[I]t has been recognized that the use of code . . . present[s] listening
13  officers with special problems" that justify a larger percentage of non-pertinent
14  calls being intercepted. Turner, 528 F.2d at 158.

15  Considering all the circumstances in this case, even though a high
16  percentage of intercepted calls were not drug related, the Court finds that
17  minimization efforts were reasonable. See Scott, 436 U.S. at 140-41 (finding
18  minimization reasonable even though sixty percent of intercepted calls were not
19  relevant); Torres, 908 F.2d at 1423. The government has made a prima facie
20  showing of reasonable minimization. Purvis has not pointed out any specific
21  conversation that the government seeks to admit that should have been minimized.
22  Nor has Purvis shown specifically how more effective minimization could have
23  taken place. The Motion to Suppress is denied.

24  **C. The Propriety of a Franks Hearing**

25  Purvis argues that Sullivan made a willful or reckless false statement when
26  he claimed:

27  based upon all the facts set forth herein, I belief [sic] that the interception of
28  wire communications is a necessary technique to achieve the goals of this

|   |   |
|---|---|
| 1 | investigation. The following investigative procedures have been tried and |
| 2 | have failed, reasonably appear to be unlikely to succeed if they are tried, or |
| 3 | are too dangerous to employ. |
| 4 | Vasquez & Traylor Ex. B ¶ 94. Purvis argues that the very same affidavit showed |
| 5 | that the normal investigative techniques of physical surveillance, subject |
| 6 | interviews, and undercover work were successful and productive and therefore the |
| 7 | statement that "normal investigative techniques have failed" was false. Purvis |
| 8 | argues that such a false statement was willfully made because it was repeated |
| 9 | numerous times within the Sullivan Affidavit, negating the argument that its |
| 10 | inclusion was negligent. |
| 11 | The government argues that Purvis has failed to make the requisite showing |
| 12 | of a deliberate or reckless falsehood. Purvis does not identify a single false |
| 13 | statement of *fact* or material omission of *fact*. Purvis merely takes issue with |
| 14 | Sullivan's conclusion from the facts contained within the Affidavit. |
| 15 | Purvis misunderstands the reasons a Franks hearing is available. "[W]hen |
| 16 | the Fourth Amendment demands a factual showing sufficient to comprise |
| 17 | 'probable cause,' [or necessity,] the obvious assumption is that there will be a |
| 18 | *truthful* showing . . . ." Franks, 438 U.S. at 164-65 (citation omitted). "Because it |
| 19 | is the magistrate who must determine independently whether there is probable |
| 20 | cause, it would be an unthinkable imposition upon his authority if a warrant |
| 21 | affidavit, revealed after the fact to contain a deliberately or reckless false |
| 22 | statement, were to stand beyond impeachment." Id. at 165 (internal citations |
| 23 | omitted). It is clear from a review of the affidavit that Sullivan's conclusions as to |
| 24 | necessity were not material. Judge Matz is presumed to have relied on the facts |
| 25 | alleged in the Sullivan Affidavit to determine whether to make a finding of |
| 26 | necessity. There was an abundance of facts from which he could |
| 27 | have -- and clearly did -- reach this conclusion. See Vasquez & Traylor Ex. B ¶¶ |
| 28 | 95-110. Purvis does not argue that any of these facts are false. Purvis has not |

1  established entitlement to a <u>Franks</u> hearing.  Even if Sullivan's conclusions were
2  determined to be false, and were set aside, this Court would reach the same
3  conclusion as Judge Matz.  There is no purpose to having a <u>Franks</u> hearing.
4
5      IT IS SO ORDERED.
6
7
8  Dated: 3-8-05                                  Dale S. Fischer
9                                                United States District Judge